IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUCIAN MOON PATCHELL,<br><br>Defendant. | No. 6:15-cr-00108-AA<br>**OPINION AND O R D E R** |

AIKEN, District Judge:

Defendant, Lucian Moon Patchell, disputes that he should be sentenced as a career offender pursuant to United States Sentencing Guidelines ("U.S.S.G") § 2K2.1. At issue is whether defendant's prior conviction for Oregon Robbery II, pursuant to Oregon Revised Statue ("O.R.S.") § 164.405 qualifies as a predicate offense under the career offender provision. For the reasons set for herein, I conclude that Oregon Robbery II is a qualifying crime of violence under the career offender provision of the Sentencing Guidelines.

/ / /

/ / /

## BACKGROUND

On March 18, 2015, a federal grand jury returned a two-count Indictment (doc. 1) against defendant for violations of 18 U.S.C. § 2113(a), based on bank robberies which occurred on February 6, 2015 and February 26, 2015.[1] On August 16, 2017, defendant pleaded guilty to Counts 1 and 2 of the Indictment (doc. 36) pursuant to a Rule 11(c)(1)(B) plea agreement. Defendant filed objections to the Presentence Investigation Report ("PSR") disputing the recommendation of the U.S. Probation Office and U.S. Attorney Office that he be sentenced under the career offender guideline. I heard oral argument on January 10, 2018. Defendant was sentenced on February 21, 2018.

At sentencing, I held that Oregon Robbery II qualified as a predicate offense under the elements clause of the Career Offender Guideline U.S.S.G. § 2K2.1. I found that the Total Offense Level was 29 and that defendant had a Criminal History Category of VI. This produced an Advisory Guideline Range of 151 to 188 months imprisonment. Pursuant to the sentencing factors found in 18 U.S.C. § 3553, I sentenced defendant to a term of 120 months imprisonment on Count 1 to run concurrently with a 120 month term of imprisonment for Count 2, with a three year term of supervised release to follow. This written opinion further explains my reasoning as to the guideline arguments presented by the parties.

## LEGAL STANDARD

Federal firearms defendants are subject to enhanced Sentencing Guidelines ranges when they commit a firearm offense after sustaining one or more felony convictions of a crime of violence. *United States v. Park*, 649 F.3d 1175, 1177 (9th Cir. 2011) (quoting U.S.S.G. §

---

[1] Defendant was arrested for the instant offense on March 19, 2015 and has remained in custody since that time.

2K2.1(a)). To determine whether a prior offense is a "crime of violence," the Application Notes to § 2K2.1 refer to the meaning given that term in U.S.S.G. § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2. Section 4B1.2(a), which is otherwise known as the "career offender provision," provides that:

> The term of 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2

> A person commits the crime of robbery in the second degree if the person violates O.R.S. § 164.395 (robbery in the third degree) and the person:
>
>> (a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or
>>
>> (b) Is aided by another person actually present.

O.R.S. § 164.405.

> A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in O.R.S. 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:
>
>> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or
>>
>> (b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.

O.R.S. § 164.395

## DISCUSSION

Initially, I note that the parties cite conflicting holdings regarding the applicability of O.R.S. § 164.405 as a predicate offense under Sentencing Guidelines. In *Wicklund v. United States*, Judge Hernandez held that Oregon Robbery II was not a crime of violence pursuant to U.S.S.G. § 2K2.1. 2016 WL 6806341 (D. Or. 2016). In a more recent decision, Judge Mosman held that Oregon Robbery II qualified as violent felony under the Armed Career Criminal Act ("ACCA"). See, *United States v. Ankeny*, ("*Ankeny II*"), 2017 WL 722580, at *5 (D. Or. 2017).[2] While their analysis is helpful, neither holding binds my decision here.[3]

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Beckles v. U.S* 137 S.Ct.886, 891 (2017) (citing *Gall v. United States*, 552 U. S. 38, 49–50). A district court applies the guidelines in effect on the date of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii). The court properly applies the version of the Sentencing Guidelines in effect at the time of sentencing, unless doing so would violate the *ex post facto clause*." *United States v. Thomsen*, 830 F.3d 1049, 1071 (9th Cir. 2016); USSG §§ 1B1.11(a), (b)(1). "To implicate *ex post facto* concerns, amendments to the Sentencing Guidelines must present 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" United *States v. Waters*, 771 F.3d 679, 680 (9th Cir. 2014) (quoting *Peugh*

---

[2] This decision is currently on appeal to Ninth Circuit. Case No. 17-35138
[3] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see also Starbuck v. City & Cty. of S.F.*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another.")

4 - OPINION AND ORDER

*v. United States*, 133 S. Ct. 2072, 2082 (2013)). There are no *ex post facto* concerns here. Accordingly, the applicable guidelines are set forth in the 2017 Sentencing Guidelines Manual.

Under the current Guidelines, § 4B1.2(a) contains two clauses—the "elements clause," § 4B1.2(a)(1); and the "enumerated offenses clause," § 4B1.2(a)(2). If Oregon Robbery II falls within either clause, it is a "crime of violence" under the Guidelines. I first examine Oregon Robbery II is crime of violence in relation to the elements clause. § 4B1.2(a) ("'[C]rime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [. . .] has as an element the use, attempted use, or threatened use of physical force against the person of another .")

In deciding whether a defendant's prior conviction qualifies as a crime of violence under the Sentencing Guidelines, courts first apply a formal categorical approach. *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Slade*, 873 F.3d 712, 714 (9th Cir. 2017). First, we decide whether the elements of the prior crime match the elements of the generic federal definition of a crime of violence. *Slade*, 873 F.3d at 714 (9th Cir. 2017). If the statute of conviction is overbroad and not a categorical match, we then ask whether the statute is divisible into separate crimes with unique elements. *Id.* If the statute is divisible, only then may a court apply the modified categorical approach. *Id.*

Thus, my first task is to examine the statute of conviction to determine whether it categorically qualifies as a predicate offense for federal sentencing purposes. In doing so, I focus solely on whether the elements of the statute of conviction match the elements of the identified qualifying federal offense. *Taylor*, 495 U.S. at 600–01. If they do match, the conviction may be used to enhance the sentence without looking further. *United States v. Arriaga-Pinon*, 852 F.3d

5 - OPINION AND ORDER

1195, 1199 (9th Cir. 2017). However, if the state statute criminalizes conduct that would not qualify as a federal predicate offense, then the offense does not categorically qualify as a proper predicate offense. *Id.* (citing *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc), *superseded on other grounds* by U.S.S.G. § 2L1.2 cmt. n. 2 (2002)).

I find that O.R.S. § 164.405 is not a categorical match under the career offender guideline. In order to be a match, the statute in question must contain "an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(1). "However, the inclusion of 'physical force' as an element of the state statute is not, standing alone, sufficient to make conviction under that statute a predicate offense." *Wicklund*, 2016 WL 6806341, at 2 (citing *United States v. Dunlap*, 162 F. Supp. 3d 1106, 1113 (D. Or. 2016)).

The Ninth Circuit has previously held that Robbery II in Oregon is a violent felony under the ACCA. *See United States v. Ankeny ("Ankeny I")* 502 F.3d 829, 840 (9th Cir. 2007) ("The Oregon statutory definition of second-degree robbery contains the required element of use, attempted use, or threatened use of physical violence."). However, *Ankeny I* was decided before the Supreme Court determined that the phrase "physical force" actually means "violent force," or "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) ("*Johnson I*"). This force must also "be inflicted intentionally, as opposed to recklessly or negligently." *United States v. Lawrence*, 627 F.3d 1281, 1284 (9th Cir. 2010).

As noted in *Ankeny II*, there are realistic, as opposed to hypothetical scenarios where a person could commit Robbery II with minimal force, under paragraph b, while being aided by

another person actually present. 2017 WL 722580 at 2. A commonly used example is that of a purse snatcher who steals a purse while an accomplice distracts the victim. "Even though the purse snatcher's actions would constitute Robbery II, it is difficult to argue that such actions are 'capable of causing physical pain or injury to another person.'" *Id.* (citing *Johnson*, 130 S. Ct. at 1271).

The court in *Wicklund* also found the statute overbroad but relied on *State v. Johnson*, ("*Johnson II*") in determining that very little force is needed to sustain a Robbery III conviction in Oregon. 215 Or. App. 1, 168 P.3d 312. Judge Hernandez succinctly summarized the facts of that case as follows:

> *State v. Johnson* is a quintessential purse-snatching case. The victim, an 86–year-old woman, drove home after her weekly bingo game, parked her car, and climbed the stairs to her house. Her hands were full—she was carrying a vase of flowers in her left arm, she had her purse on her left shoulder, and her snacks and cane were in her right hand. As she walked up the stairs, she felt her arm slip and thought she was losing her purse. She reached to put her purse back on her shoulder and, at that point, saw the defendant running away with her purse and flowers. Id. The victim testified that she did not feel a tug or much of anything. The perpetrator was subsequently convicted of Oregon Robbery III.

*Id.* (internal citations omitted). Because later Oregon Supreme Court decisions "did not address, much less overrule" *Johnson II*, the court in *Wicklund* held that Oregon Robbery could not be a crime of violence under the elements clause. *Id.* at 3.

It is important to note that while Robbery II is a distinct crime, it does incorporate and adopt the force element from Robbery III. *See* O.R.S. § 164.405. Regardless, it is clear that Robbery II is overbroad under the categorical approach. However, I find that the analysis does not end here. I now must examine Robbery II to determine whether its provisions are divisible.

/ / /

A divisible statute is one that:

> sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits ... courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

*Descamps v. United States*, 503 U.S. 254, 262, 133 S.Ct. 2276, 2281, (2013).

Further, to determine whether a statute is divisible, I consider whether "an element of the crime of conviction contains alternatives, one of which is an element of its federal analogue." *Acosta–Chavez*, 727 F.3d at 909 (citing *Descamps*, 133 S.Ct. at 2283–84). A disjunctive statute is divisible "only if it contains multiple alternative elements, as opposed to multiple alternative means." *Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir.2014). More specifically, "[o]nly when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative elements and not alternative means." *Id.*

To determine whether the elevating conditions are separate elements as opposed to separate means, I must look to Oregon state law. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). The question of whether a statute is divisible pursuant to the career offender provision of the Sentencing Guidelines is not necessarily a question a state case may answer directly, but state law can provide guidance as to whether the various subparts of a statute amount to multiple, alternative elements of functionally separate crimes or multiple, alternative means of the same crime. *Ankeny II* 2017 WL 722580 at 4.

8 – OPINION AND ORDER

Oregon law has three statutes that "provide an incrementally graded set of standards for determining the seriousness of different forms of robbery." *Oregon v. White*, 346 Or. 275, 285 (2009). Robbery III describes the basic crime of robbery: "taking or attempting to take property from another while preventing or overcoming the victim's resistance to giving up the property by using or threatening to use physical force." *Id.* "The crimes of second- and first-degree robbery then use third-degree robbery as a foundation and build on its elements by identifying additional elements that, if present, make the crime a more serious one." *Id.* The Oregon Supreme Court refers to these additional elements as different "aggravating factors." *Id.* at 289.

By looking carefully at the rationale in *White*, and the structure of the Robbery II statute, I agree with analysis in *Ankeny II* and conclude that the statute is divisible. The Oregon Supreme Court in *White* considered whether a defendant's conduct that satisfied both enhancing conditions under Robbery II could support two separate guilty verdicts. 346 Or. at 278-279. The court ultimately held that the two verdicts merged for sentencing purposes. However, the court also noted that the elevating conditions from Robbery II constitute different elements that "involve proof of different facts." *Ankeny II*, 2017 WL 722580 at 4 (citing *White*, 346 Or. at 286). Moreover, the criminal episode, which satisfied both paragraphs of § 164.405, supported two different guilty verdicts on two separate jury instructions. *Id.* Even though these verdicts eventually merged for purposes of sentencing, the fact that they were instructed separately indicates the statute is divisible. *Id.*

Second, when state law "fails to provide clear answers" on the divisibility of a statute, courts may "peek at the [record] documents" for the "sole and limited purpose of determining whether the [listed items are] element[s] of the offense." *Mathis*, 136 S. Ct. at 2256–57 (quoting

9 - OPINION AND ORDER

*Rendon*, 782 F.3d at 473–74) (internal quotation marks omitted). Here, defendant was charged on August 23, 2015 with three counts of Robbery II in Jackson County, Oregon under subsection (1)(a) of ORS 164.405. The Amended Indictment alleged that, on three occasions, defendant: "did, unlawfully and knowingly, while in the course of committing theft, and with the intent of preventing and overcoming resistance to defendant's taking of property and retention of the property after the taking, threaten the immediate use of physical force upon another person and represent by word and conduct that defendant was armed with what purported to be a deadly weapon." Govt. Sent. Ex. 9 at 2615-17. Defendant was convicted of all three counts and received the following sentences: as to Count 1, 70 months; as to Count 2, 70 months with 44 months concurrent to Count 1 and 26 months consecutive to Count 1; and as to Count 3, 70 months concurrent to Counts 1 and 2.

Further, the Oregon Uniform Criminal Jury Instructions indicate divisibility. OR-ICRIM 2101; ER 101-102. *See Mathis*, 136 S. Ct. at 2257 ("[J]ury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.") Unlike the intent element, which allows the jury to find the element whether the defendant acted preventing or overcoming resistance or compelling someone to deliver the property or aid the crime, the instructions make clear that the aggravating element of representing by word or conduct that a defendant was armed with deadly or dangerous weapon must be found independently.

Defendant urges that I follow approach taken in *Wickland* and hold that as long as *Johnson II* is still good law Robbery II cannot be crime of violence. However, *Johnson II* is not dispositive in determining the divisibility of Robbery II. That case dealt with a conviction for

Robbery III, and, indeed, other courts have been clear that Oregon Robbery III does not require the force necessary to be match for a violent felony under the ACCA. *See U.S. v. Strickland,* 860 F. 3d 1224 (9th Circuit 2017); *Dunlap,* 162 F. Supp. 3d at 1106.

However, it goes without saying that Robbery III is not the same offense as Robbery II, namely it does not contain the elevating conditions at issue here. *Ankeny II,* 2017 WL 722580 at 5. "Additionally, unlike the disjunctive phrases in Robbery III, a jury would need to unanimously agree that a person (a) represented he was armed with what purports to be a dangerous weapon, or (b) was aided by another person actually present to convict that person of Robbery II." *Id. See also Ramirez v. Lynch,* 810 F.3d 1127, 1134 (9th Cir. 2016) ("[T]he key question we must ask when determining a statute's divisibility is whether a jury would have to be unanimous in finding those separate elements.") Based on all these reasons, I find the enhancing conditions in Robbery II to be divisible.

When the statute of conviction is divisible, "the modified categorical approach permits sentencing courts to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps,* 133 S.Ct. at 2281. These documents include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Shepard v. United States,* 544 U.S. 13, 26, 125 S.Ct. 1254, (2005). "The court can then . . . compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps,* 133 S.Ct. at 2281.

If jury unanimity is required, then the alternatives are elements, and under the "modified" categorical approach, a court may analyze subsection (a) in isolation to determine whether it is categorically a crime of violence. *Id.* at 2248–50. By contrast, if a jury could return a conviction *without* agreeing on which particular statutory alternative applied, then the statute is indivisible and does not categorically define a crime of violence. *See United States v. Robinson*, 869 F.3d 933, 938 (9th Cir. 2017).

Here, it is clear, based on clear language of the 2005 Jackson County Amended Indictment, that defendant was charged with three counts of Robbery II under paragraph (1)(a) of O.R.S. § 164.405.

Next I must determine whether a conviction pursuant to O.R.S. § 164.405(a) qualifies as a crime of violence under the U.S.S.G. 2K2.1. Again, the Oregon Supreme Court's decision in *White* and the court's analysis in *Ankeny II* is helpful.

> The court in *White* noted that it is the "concept of fear or threat of violence that separates robbery from mere theft." Indeed, the "use or threat of violence is what causes the victim to part with the property, and that coercive effect is what each of the robbery statutes addresses." Although *White* uses the word "violence," its findings are instructive on the level and quality of force required for Robbery II. Essentially, *White* shows that the coercive effect on the victim from the use of force or violence increases by virtue of the robber purporting to have a dangerous weapon or being accompanied by another person. The effect of either elevating circumstance "results in different levels of threat that may persuade the victim to part with his or her property with more or less reluctance." Thus, because *White* makes clear that the representation of a weapon increases the coerciveness of the threat or use of force, the force and weapon elements under Robbery II are necessarily conjoined.

*Ankeny II*, 2017 WL 722580 at 6 (internal citations omitted).

The fact that a defendant must objectively represent by word or action that she was armed with dangerous or deadly weapon in the commission of the robbery distinguishes the Oregon Robbery II from other robbery statutes that the Ninth Circuit has held do not qualify as violent

12 - OPINION AND ORDER

felonies under the ACCA. *See United States v. Parnell, 818 F.3d 974 (9th Cir. 2016); United States v. Molinar, 876 F.3d 953 (9th Cir. 2017).* Those cases dealt with Massachusetts and Arizona armed robbery statutes, respectively, where the courts found that a person could be convicted of the crime without the victim knowing the perpetrator was armed. The Ninth Circuit explained that the mere possession of a firearm while committing the crime of robbery was not enough to qualify as violent felony. "There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force. Only the latter falls within the ACCA's force clause." *Parnell*, 818 F.3d at 979 (emphasis removed).

In contrast, O.R.S. § 164.405(1)(a) requires an actual use of the weapon to effectuate the robbery. This conclusion is further bolstered by the analysis in *White*, which provided that "the use or threat of violence is what causes the victim to part with the property" and that the coercive effect increases with each gradation of robbery. *Ankeny II* 2017 WL 722580 at 7. (citing *White* 346 Or. at 289.) ("In other words, the mere representation that a robber is armed with what purports to be a dangerous weapon makes it more likely that the victim will relinquish property in response to the robber's demand.")

Defendant argues that there are still scenarios in which someone might be convicted under O.R.S. § 164.405(1)(a) without the communicating an intent to use a weapon. He offers the example of a purse snatcher who, like the defendant in *Johnson II*, snatches a purse before the victim realizes what is happening. But he contends that if the hypothetical defendant were carrying a gun in his waistband, and the victim saw the weapon while the defendant was fleeing the scene of crime, then the elevating condition under § 164.405(1)(a) would be satisfied. A

13 - OPINION AND ORDER

similar scenario was presented by the defendant in *Ankeny II*. As Judge Mosman noted, the problem with this scenario is that "the representation that one is purportedly armed with a dangerous weapon is completely divorced from the use or threatened use of force. Thus, the hypothetical does not contain what *White* asserts is a necessary part of Robbery II: that the representation of a dangerous weapon objectively elevates the threat to the victim." *Ankeny II* 2017 WL 722580 at 7.

Defendant points to no actual Oregon state cases for a conviction under Robbery II which resemble their hypothetical.[4] Defendant's scenario is too speculative and does not present a "realistic probability . . . that the State would apply its statute to conduct that falls outside" the requirements of a violent felony. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013). As such, under the modified categorical approach, paragraph (a) of Robbery II is not overbroad and can validly qualify as a crime of violence pursuant to the career offender guideline under the elements clause.[5][6]

---

[4] Defendant relies on *Oregon v. Lee*, a case in which the Oregon Court of Appeals considered whether the crime of menacing is a lesser included offense of Robbery II. 23 P.3d 999, 1002 (Or. App. 2001). I do not find this case persuasive. Even though the robber from the hypothetical in *Lee* does not intend that the victim feel fear, the presence of the weapon still elevates the coerciveness of the robber's threat or use of force. *Ankeny II* 2017 WL 722580 at 7 (citing *White*, 346 Or at 289-290).

[5] Given my holding, I find it unnecessary to examine whether Oregon Robbery II qualifies as a crime of violence under the enumerated offense clause. U.S.S.G. § 4B1.2(a)(2)

[6] Defendant raised two additional arguments not included in his written briefing at the sentencing hearing held on February 21, 2018. First, defense counsel asked me to note that there may be have been a change in the law with regard to whether defendant's 2004 Washington state conviction for Possession with Intent to Manufacture or Distribute Methamphetamine qualifies as a predicate offense under the career offender guideline. Defense counsel then represented that defendant was not challenging whether the conviction was a predicate offense for the purposes of sentencing in this case pursuant to the plea agreement. Given this representation, there is nothing for me to resolve regarding this argument.

14 - OPINION AND ORDER

## CONCLUSION

Under the categorical approach, Oregon Robbery II is overbroad as compared to the requirements for a crime of violence under the career offender guideline U.S.S.G. § 2K2.1. The statute is divisible because the elevating circumstances in paragraphs (a) and (b) constitute alternative elements, as opposed to alternative means. Thus, under the modified categorical approach, a conviction under paragraph (a) of O.R.S. § 164.405(1) meets the definition of a crime of violence, meaning that Defendant's Robbery II conviction is a valid predicate offense under the Career Offender Guideline.

IT IS SO ORDERED.

Dated this 19th day of March 2018.

_____
Ann Aiken
United States District Judge

---

Defendant also asked the court to consider a recent unpublished district court decision in *United States v. Durr*. 3:09-cr-00080-JO (D. Or. Sept. 11, 2017). This was an ACCA case where the defendant moved, pursuant to 28 U.S.C. § 2555, to vacate a previous sentence for a conviction for Possession with Intent to Distribute Methamphetamine. The parties' stipulated that the defendant was no longer an Armed Career Criminal pursuant to *Johnson I*. The court considered whether defendant's past conviction for Oregon's Attempted Robbery I pursuant to O.R.S. § 164.415, qualified as a crime of violence pursuant to the career offender guideline. The parties stipulated that Oregon's Robbery I statute was divisible. The court then employed a modified categorical approach and held that the *Shepard* documents submitted by the government did not establish which subsection of the robbery statute the defendant was convicted of violating. Thus, because the judgment and indictment were unclear, the court held that the defendant's conviction for Attempted Robbery I could not be a crime of violence.

This ruling is not helpful my analysis here. The statute analyzed was Oregon Robbery I, not Robbery II. Moreover, the parties stipulated to divisibility, and Judge Jones performed a modified categorical analysis and determined that the defendant's conviction for Attempted Robbery I was not a predicate offense pursuant to the career offender based on facts particular to that case.